UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA

                                             **Hon. Hugh B. Scott**

                                             07CR37S

v.

                                             ***Report***
                                             ***&***
                                             ***Recommendation***

Timothy Cowley,

                        Defendant.
_____

The defendant has filed an omnibus motion seeking the following relief: suppression of evidence; severance of trial; and preservation of evidence. (Docket No. 81)[1]

**Background**

On February 13, 2007, a federal grand jury returned a two-count indictment charging defendant Timothy Crowley, along with co-defendant Peter Giglia, with conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. The indictment also charged Giglia in Count II with forfeiture under 21 U.S.C. § 853.

On January 4, 2006 and February 7, 2006, Hon. William M. Skretny signed two wiretap

---

[1] The discovery motions are the subject of a separate Decision & Order.

orders authorizing law enforcement to monitor the cellular telephone number belonging to Peter Giglia.  Crowley was not named as a target in either warrant.  During the execution of the warrants, eight telephone conversations were intercepted involving conversations between Giglia and Crowley. Crowley contends that the conversations between he and Giglia in these intercepted calls involved making plans to get together for drinks or meals. The government contends that the two were discussing drug transactions.  The defendant "acknowledges that Mr. Giglia is alleged to have used code terms such as "cocktails", "lunch" and "happy hour" to arrange drug deals.  According to the defendant, "[h]owever, Mr. Giglia certainly used those terms to describe food and drink as well.  Whether those terms meant a drug deal or a beer depends on the context.  There is nothing in the calls that point to anything but an innocent conversation." (Docket No. 81 at ¶ 16).  Therefore, Crowley contends, the recording of those calls should have "stopped and the calls minimized.." (Docket No. 81 at ¶ 16).   Crowley also argues that the government failed to sufficiently demonstrate the necessity for the wiretap orders.

## Necessity

Crowley argues that the government failed to establish the necessity of the wiretap warrants.  The defendant suggests that the affidavit of FBI agent John R. Stamp indicates that the investigation was working without the necessity of a wiretap. (Docket No. 81 at ¶ 11-13).  In this regard, the defendant relies principally on United States v Lilla,  699  F.2d  99  (2d  Cir. 1983). It should be noted that Lilla  has been distinguished at least three times by the Second Circuit itself and by at least two District Courts in this Circuit. United States v. Torres,  901 F.2d 205 (2d Cir.), cert. denied sub nom. Cruz v. United States, 498 U.S. 906 (1990); United States v.

Puglisi, 790 F.2d 240 (2d Cir. 1986); United States v. Ruggerio, 726 F.2d 913 (2d Cir.), cert. denied sub nom. Rabito v. United States, 469 U.S. 831 (1984); United States v. Blount, 30 F. Supp.2d 308 (D. Conn. 1998); and United States v Crozzoli, 698 F. Supp. 430 (E.D.N.Y. 1988).

An application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Although these requirements control the use of such intrusive measures, they "were not intended to turn electronic surveillance into a tool of last resort." United States v. Valdez, 1991 WL 41590, *2 (S.D.N.Y. 1991), aff'd, 952 F.2d 394 (2d Cir. 1991). Further, these requirements are to be construed in a "common sense and realistic fashion." Ruggiero, 726 F.2d at 924. As the Second Circuit has repeatedly made clear:

> The purpose of the[se] statutory requirements is not to preclude the use of electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

Torres, 901 F.2d at 231.

In assessing whether the government has satisfied this burden, the Second Circuit has warned that the averments alleged in connection with the use of normal investigative techniques are not to be reviewed *de novo*. Torres, 901 F.2d at 231. The role of the reviewing Court instead is simply to "decide if the facts set forth in the application were minimally adequate to support the determination that was made." Torres, 901 F.2d at 231; see Ruggiero, 726 F.2d at 924 (use of certain normal investigative techniques-- such as search warrants, grand juries or interviews--unnecessary where such techniques would publicize the investigation" and

"perhaps jeopardize the investigation itself"); United States v. Villegas, 1993 WL 535013 (S.D.N.Y. 1993); United States v. Miranda, 1993 WL 410507 at *2-3 (S.D.N.Y. 1993) (court's initial "determination that normal investigative techniques would not suffice is entitled to substantial deference.").

Finally, the Court has deemed wiretapping "particularly appropriate" where, as here, "the telephone is routinely relied on to conduct the criminal enterprise under investigation," United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987). Indeed, in the context of narcotics conspiracies, the Court "has held that the government meets its burden by submitting a wiretap application supported by an affidavit describing how traditional investigative techniques had failed to provide more than 'a limited picture' of [the] narcotics organization." Valdez, at *2 (quoting Torres, 901 F.2d at 232).

Particularly in light of the deferential standard to be applied, the defendants' assertion that the government failed to meet the necessity requirement must fail.

The defendant's motion to suppress the evidence obtained by electronic surveillance on the grounds that the government failed to demonstrate the necessity of electronic eavesdropping should be denied.

**Minimization**

Crowley also argues that the government did not adequately utilize minimization techniques in executing the wiretap orders. This argument must also fail. As quoted above, Crowley acknowledges that the terms used by Giglia can be code words for drug transactions. Notwithstanding this acknowledgment, Crowley argues Giglia only used these terms in an

innocent context with Crowley, and thus, the government should have stopped recording their conversations.

Initially, it is undisputed that the phone that was the subject of the wiretap orders belonged to Giglia not Crowley. The government argues that Crowley lacks standing to assert a minimization challenge inasmuch as he has not claimed any privacy interest in the tapped telephone. United States v. Ruggiero, 928 F.2d. 1289, 1303 (2d. Cir. 1990)(even defendants who are named targets in interception authorization may lack standing to challenge minimization); United States v. Gallo, 863 F.2d 185, 192 (2d Cir.1988) (Title III suppression provisions to be construed in accordance with standing requirements of Fourth Amendment; defendants lacked standing to claim minimization violation regarding electronic surveillance at another's home); United States v. Fury, 554 F.2d 522, 526 (2d. Cir. 1977)(Fury does not have standing, however, to raise the issue of improper "minimization" during the Schnell tap. That is because the tap on Schnell's phone and the failure to minimize the conversations intercepted is an invasion of Schnell's privacy, not Fury's.)

Crowley fails to address this standing issue in any way. Crowley lacks standing to raise the minimization challenge. The motion to suppress the intercepted calls based upon a failure to minimize should be denied.

**Conclusion**

It is recommended that the motion to suppress (Docket No. 81) be denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation

be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal

authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
November 17, 2007